Good morning, Your Honor. May it please the Court, I am John La Trolla. I represent the appellant Alfredo Villegas. This was a case about one issue only. It was about whether or not the government could prove beyond reasonable doubt that Mr. Villegas was an alien, that is, not a citizen of the United States. And there was really one exhibit that directly went to that issue, and that was this so-called Mexican birth certificate. But to put in context what this jury had to decide, I think it's important for the Court to take into consideration some of the things that the jury did hear about Mr. Villegas. His family was in the courtroom. He had three United States citizen children. His United States citizen wife was in the courtroom. And so this was not a jury who was necessarily going to presume just because he was charged with an offense that he was a citizen of Mexico. And that's why this document was so important. Now, there are very specific rules that must be met in order to introduce a document, to lay the foundation for that document. And this Court has held in published decisions that this is a strict standard. That comes from Perlmuter, the case which I think is the lead case here. There are a number of ways that the government could have done that. The most obvious way that it could have introduced this document is to satisfy the requirements of Federal Rule of Evidence 9023. And had the government done that, there would have been no right to confront the witnesses. There would have been no meaningful dispute about whether this was an authentic, legitimate Mexican birth certificate. It chose not to do that. And that left the government with the burden under Federal Rule of Evidence 901 to produce a witness with knowledge that the document that it was presenting is what the government claimed it to be. And I think this is an important wrinkle in this case. The government claimed that this document was a valid Mexican birth certificate. It repeatedly made that argument to the Court and also to the jury. So in order to lay the foundation, to establish its proof, it had to do more than just say that this document was found in an A file. It had to establish that there was either a witness who could identify this as an authentic document or some marking that the government could establish corresponding with an authentic Mexican birth certificate. And it did neither of those things. The government contends the defendant in the case signed the document. He was a minor when he fixed his signature, but that's my understanding is that they take that position. And so my question is, isn't that enough to indicate? The government actually, there was one part of the transcript in which a government witness who had no basis to know claimed that the defendant signed that document. That is a dispute. Agent Oki. Agent Oki. Yes. And that, I believe, is not supported by the evidence. And certainly, that was not one of the things that the court took into account when the court admitted this document. The document that the court's referring to is in the excerpts of record. I believe it's at page ER 112. And there's a signature which appears illegible to me. This is Exhibit 24 in the trial, right? That's right. Yes. And there was conflicting evidence that suggested that it was his mother that signed the document and not him. And so certainly, if this case turned on a finding of fact that it was him that signed the document, that finding of fact was not made. But I don't think that even had he signed this document, which was the application for relief, that that would really change the analysis. All that really does would sort of make this closer to, bring this closer to a possible hearsay exception. But the hearsay issue really doesn't matter unless and until this document is actually authenticated. And I believe in this case, this, that's what it really turns on. Now, the government's cited in a number of I'm going to ask you this, Counsel, just to cut to the chase here. This isn't a situation where the evidence really depended on one document or even a small handful of documents. I think the evidence seemed fairly overwhelming with nine prior deportations, admissions. I think the government played a tape recording which admitted that he was born in Mexico and that he was not a U.S. citizen. He testified and admitted on cross-examination that he had previously admitted to his birth in Mexico. And nine prior deportations. So why isn't all this harmless, even if we assume that there was some error in the court's evidentiary rulings? This is, I should tell you, this is my concern also. I think Perlmutter's a very good case for you. But I want to say that there were maybe eight, further to Judge Wynn's point, I want to say eight times that he had previously acknowledged that he was an alien. This is the government's claim. So I would join in Judge Wynn's question. I think it is at the heart of this case, was this error harmless? And I just ask the court to keep in mind a few things. One is, it's the government's burden to prove, more likely than not, that this did not affect the verdict. And so really they carry that burden. Now, there was, it's true. So why wasn't this burden carried, assuming that that's true? There were a number, I think that there is strong evidence against Mr. Villegas-Alvarez. But it all fell within one category, and that is his own statements. And another category, which is basically administrative documents that record his removals. Now, in those removal proceedings, I think the removal proceedings themselves wouldn't even be sufficient to find his alienage. And there's published case law on that. So I think the court has to set that aside the same way it did under Marguerite Piago. So the fact of his removal really doesn't move the ball forward. Now, his repeat admissions that he's a citizen of Mexico, I agree, are something that a jury would have taken very seriously. But this was a case where he testified and he explained those admissions. And he explained it by saying that he didn't know where he was born, that he never really questioned what the agents were saying. And he actually characterized these discussions as the agents telling him that if he admitted that he was a citizen of Mexico, then they would immediately deport him so that he could come home. And by home, he meant return to the United States and be with his family, and that's what he did. Because the evidence was indisputed that his family was all in the United States and they were all United States citizens. And so this jury, having this evidence, deliberated for quite some time. Now, I filed something else. What are we required to assume about the jury's view of your client's credibility when he gave that explanation in performing our harmless error analysis? Well, certainly all we know is that the jury heard that he was deported a number of times, that he made a number of admissions. But they also heard his explanation under oath and they heard a lot of facts about his life. And that jury struggled with its decision. By my calculation, which I again acknowledge, I got it wrong in my briefs and I tried to do the best I can. I'm not even sure I have it right now. But my best estimate of the time that this jury was deliberating was more than four hours. And this was a case in which the time taken to present the evidence itself was, I believe, less than four hours. So this was not a slam-dunk case. Now, it certainly could have been a slam-dunk case. And had a jury returned right away, I think that would be very telling. You know, the amount of time a jury deliberates really doesn't mean that it was a difficult case. It all depends on how much time each one takes to speak and what's going back and forth. I tend to agree, Your Honor. And I think that that leaves us with some published cases in similar factual circumstances where this Court has held that similar errors were not harmless. I think the most obvious case is Marget Piatto. That was a case where there was one statement in the record by somebody who was not even the blood relative of the case. And the court said that there was little doubt that that was not harmless. Another situation is the one in Sandoval-Gonzalez. And I put that – discuss that in my briefs. I see you only have about less than two minutes. I'd like to reserve the remainder of my time for rebuttal. Good morning, Your Honors. May it please the Court, Byron McLean on behalf of the United States. First and foremost, concerning the proper authentication of the Mexican birth certificate of the defendant, I want to address the standard of review. And it's the government's position that the correct standard of review in this case is an abuse of discretion standard. And it's an abuse of discretion standard based on the fact that it was a question of fact that the court was addressing in this case. Specifically, even the court cases that the defense counsel cites, the Palmer case in particular, also use the abuse of discretion standard. But even if this court were to use a de novo standard, it is the government's position that the Mexican birth certificate was properly authenticated in this case. And that's based on Rule 901A and Rule 901B4, which says that the government only needs to make a prima facie showing of authenticity of this Mexican birth certificate. And that this court should take into consideration all of the circumstances surrounding this particular document. Now, I think it's important to acknowledge that this birth certificate was not just loose in the defendant's A file. In particular, it's undisputed that this Mexican birth certificate was provided by the defendant on the defendant's behalf. How do we know that? How do we know that? Because the document that was put into evidence references the birth certificate and it's actually attached to the LPR application. And that's not in the suit. In fact, in the record, when defense counsel was cross-examining the Agent Oki, he basically asked Agent Oki, look, you're making a statement that it was the defendant that provided this document, but it was actually the mother that provided the document, correct? And Agent Oki said yes, because it was attached to the LPR application. So I don't think that was in dispute during the trial, the fact that the birth certificate was attached to that LPR application. But I think that that's an important circumstance that this court needs to recognize. Because it's not just that this birth certificate was loose in the file. It was attached to this LPR application. The defendant actually received an immigration benefit as a result of this application and the birth certificate being attached to it. I think your colleague, Mr. Luttrell, would say that if we go down that road, we're confusing the, something like an addition against interest analysis under the hearsay rule with the requirements that a document be authentic. And I heard him make that argument this morning. What do you think about that? I think that the specific evidence can be used for both analyses. I think, I want to make it clear, the government is not making an argument under 9023 that this birth certificate was a self-authenticating foreign document. It's not making that argument. What it is saying is that this birth certificate was provided by the defendant on the defendant's behalf with his legal permanent resident application, that the defendant received an immigration benefit as a result of this application, and that this particular birth certificate matched important information that the defendant made in his own admissions, and that was located otherwise in the A file, the date of birth, September 11, 1974, the place of birth, Tijuana, Baja, California, Mexico. And so the judge in this case found that the government met its prima facie showing, and then at that point, it's up to the jury to determine how much weight, how much provativeness to give to that birth certificate. Is what distinguishes this case from Perlmutter in your mind, the fact that this document, the birth certificate, was provided by the defendant? Absolutely, Your Honor. Okay, then here's my question. What if we decide that he didn't provide it, that his mother provided it? Does that make a difference? It doesn't because it was provided on the defendant's behalf. So anybody that puts in, what if it's not his mother? What if it's his cousin or some other third party? I do think it's very significant that it was the defendant's mother. Who better to know where the defendant was born than the defendant's mother? Is the fact that he was a minor at the time the document was provided germane to the question of whether someone has the authority, can make an authorized, what you're, I would say, characterizing as an authorized admission on his behalf? Well, it's my understanding, Your Honor, that the defendant himself wouldn't be able to provide, wouldn't be able to submit this application by himself because he was a minor. So therefore, the mother provided the application on his behalf. Well, I don't dispute that. I'm just trying to figure out this question of authority and impugning the filing of a document to the defendant. Does it make a difference? You know, do any of these things make? I don't think it makes a difference to the prima facie showing that the government had to show. I think it does go to the analysis as to whether or not it's non-hearsay or meets a hearsay exception. And it's the government's position that it would be non-hearsay because it's an adoptive admission of the defendant. He basically, in its many statements and many omissions, adopts the information that's in this birth certificate. And it would also be an agent admission because the mother was acting as a representative on behalf of her child. And it was in the capacity of that representation that she provided this birth certificate. So as a result, it would fall under 801D2. I think you have a pretty good harmless error argument, but I'm enjoying this discussion that we're having. So let me just ask you, doesn't agency require some authority? And the authority in this case, Your Honor, would be that it was the defendant's mother. She was acting in her capacity as the parent of her child. And it was in that capacity that this LPR application and the birth certificate attached to the application was provided. So it was within that capacity. So it directly falls under 801D2. Just to add, just to talk about the harmless error analysis, Your Honor. I specifically, so there were specifically four sworn statements that the defendant made where he admitted that he was a Mexican citizen and national. And those took place in December 2000, February 2010, March 2011, and May 2011. I specifically asked the defendant on cross-examination if he would have made those statements if they were not accurate. And if you look at GER 159, I said to the defendant, and it looks as if it says here, of what country are you a citizen? It says Mexico, correct? And the defendant said, that's what it says, yes. And I asked, on the second page of this document, is your signature right? The defendant said, that's correct. Then my question, now, you wouldn't have signed this document if it weren't accurate, right? The defendant says, that's correct. It's the government's decision. That's the most important piece of evidence right there. The defendant is saying on cross-examination, the information I gave in my sworn statement was correct. And in addition to that, the fact that the immigration removal hearing in December 1997, where the defendant said, under oath, I am a citizen and national of Mexico, your honor. The defendant admitted multiple statements. And his June 2012 arrest statement, he said, I'm a citizen and national of Mexico. So all of this evidence, right? Well, this birth certificate that we have here, what does that show? Santa Barbara County? So that is the birth certificate of defense counsel's brother-in-law that they wanted to get into evidence, which is, I believe, the Santa County birth certificate. And the district court did not allow that birth certificate to come in the evidence because it found that it was irrelevant, confusing, and also a hearsay. Well, what about the, all right, you got the Mexican birth certificate. Estados Unidos or authenticated by any expert testimony? There was no expert testimony presented in this case. The testimony on the primary witness for the government was Agent Oki, who was the custodian of the AFAL for the defendant. You know, a lot of people aren't even sure where they were born. My mother-in-law, she was born in Tijuana, Baja California, Mexico. And that's why we think it's very important in this case, Your Honor, that it was the defendant's mother who provided the birth certificate, because we would presume that the defendant's mother knows where her child was born. And she represents, through, you know, her submission on this LPR application and the birth certificate, that her child, the defendant, was born in Tijuana, Baja California, Mexico. But you never have this, any of these birth certificates authenticated by any expert witness. It wasn't authenticated by an expert witness. We had, we provided pretty much a showing of authenticity through Agent Oki. If there are no further questions from the court, the government will support them. Where is he now? Where is the defendant? The defendant. He's in, he's in prison. I believe it's in Mississippi, and his scheduled release date, I believe, is March 2015. March 2015. So it'd be a little less than a year, Your Honor. Is it 2015 or 15? 15, 1-5, Your Honor. Oh, I thought it was 15. If there are no further questions from the government, the government will submit on these papers. Thank you. Thank you. Mr. Latrell, I have to ask, were you trial counsel below? I was not, Your Honor. Okay. I hear from the government that trial counsel is also counsel on appeal, it sounds like. That's correct. All right. I just want to address a few things. First, the government points out that this is an abusive discretion standard. That assumes that the judge got the law right, and my contention is he got the law wrong, so that makes it de novo review. But the distinction doesn't matter, because it would always be an abusive discretion to make an error of law, and I think that's what happened here. Second, I do strongly believe that the government is confusing the issues by talking about who submitted the document and under what circumstances. That simply just does not get us any closer to figuring out whether this document is authentic. And I think what's important is to look at what the government represented this document to the jury and to the court to be. And at ER 86, the government says in its closing argument, this is a valid birth certificate. That's what they're telling the jury. This is a valid birth certificate. They are not presenting this as an admission. They're presenting this as a valid birth certificate, and that's what carries weight in this case. That's what should have carried weight. And that gets to the other point that it is very difficult to dispute that in a case where alienage is the only contested element, the only one, that this is not the most important document that this jury saw. It was the first document that any witness brought up. It was brought up through the government's first witness. It was the first thing that the government discussed in closing, and it was pretty much all that defense counsel discussed in closing. And so just that fact alone would weigh against a finding of harmless error. Just turning to the other issue, and I think this is the irony in this case, defense counsel, once this document was presented to the jury over his objection, tried to do essentially the same thing. And he actually brought a witness and actual proof that would tend to prove that this document was fake, and that was a witness who was a United States citizen who had a birth certificate that looked just like this one, and this witness was prepared to testify. But on that, with regard to that exhibit, it is clear, isn't it, that the standard of review is abuse of discretion? Because this is a relevance call made by a trial judge. Well, it was a couple of different calls. It was a relevance call. It was a 403 call. But it was also a call that precluded the presentation of a defense. Now, the government has said, well, Mr. Villegas was able to present his defense because he could cross-examine witnesses. And so he had no need to present extrinsic evidence that would have proven that this was a fake birth certificate. But I think that that's actually not quite right in this case. One is he wasn't able to cross-examine the maker of that birth certificate or any And two is it's not enough. In Chambers v. Mississippi, which is sort of the seminal confrontation case, it was just like that. He was not allowed to confront the documents, but then he wasn't allowed to when he wasn't allowed to actually present affirmative evidence. One of the reasons that the district judge gave in excluding that document is the  birth certificate, he would have to testify to his father's statements to him regarding the origins of the birth certificate. What is your response to that? Well, that's what makes this irony so cruel is because the government presented a birth certificate and the witness who knew nothing about it testified about hearsay in order to authenticate that. So you're saying that because the government got to introduce hearsay statements, you should be able to as well? Certainly to the extent that there's any doubt. A defendant in a criminal case I think is entitled to the benefit of that doubt. So I do think it is an asymmetrical type of ruling to allow the government to present a document with no foundation that calls for hearsay, but then the person who's actually on trial can't do exactly the same thing. You don't dispute that hearsay as to the defense counsel's brother-in-law's evidence? Actually, I do dispute that, and here's why. The person whose birth certificate was there in court available to testify, he could have testified, this is my birth certificate. That's my name, my date of birth. This corresponds to my birth. So the district court's analysis was as to the Mexican birth certificate. That's relevant. That's what the defense wanted to introduce. So the district judge's analysis was how are you ever going to get there without testifying to the father's statement about the origins of the Mexican birth certificate. That's the hearsay analysis, and I don't see how that's erroneous. Well, the Mexican birth certificate's non-hearsay because it's not introduced for the truth of the matter. His position was that he was born in the United States. And so in showing the jury a Mexican birth certificate which purported to record a birth in Mexico, his position was none of that's true. And so it's not hearsay because it's not introduced for the truth of the matter. Well, the document itself, but the testimony as to the father's statements would be hearsay, wouldn't it? If it's the father, the witnesses on the stand, he would have to say, well, this is what my father told me regarding the origins of the Mexican birth certificate. That's the hearsay part of it. And that would be non-hearsay under either Rule 803.9 or 803.19, both of which concern statements about family origin. And so there was certainly a way to present this without relying on hearsay. But, again, I do think that in the end the sort of ultimate analysis turns on whether he was prevented from presenting his defense. Let's say we go your way on this point. And I think you're making a good argument about non-hearsay purpose. Would we then be essentially requiring trial judges to admit evidence of other fake documents any time the legitimacy of a public record is at issue in their trial? Someone says, well, maybe that's my driver's license, maybe it's not. And then we're going to have someone say, let me show you my fake driver's license that I got. In other words, the only way this couldn't be abuse of discretion is if it really is preclusive of a defense. And so what is that defense? And am I wrong to be worried that we're essentially requiring trial judges to admit evidence of other documents? Well, I think there's two answers to that question. The first is the problem should be solved by not admitting documents without foundation in the first place. But I think in any case where the real core issue of a trial is the authenticity of a document, I do think a court should admit extrinsic evidence that would tend to prove or that would be at least relevant to show that that document was fake. And so evidence that someone Why is it necessary to have a person, to have somebody come in and say, here is a fake document that I got, to prove the point that documents can be faked? Don't we just know that documents can be faked? How does it eliminate somebody from making that argument when we all know that documents can be faked? I guess that my position would be a criminal defendant's entitled to make that argument. And especially in a case like this one where the government repeatedly emphasized that this was a valid birth certificate. I think a criminal defendant is entitled under the Constitution to establish that a document just like this one was obtained fraudulently, especially when there's a witness in court who can testify about it. And I think the lead case on that is Stever. That was a case where a really similar type of objection or concern was raised because the defendant wanted to introduce evidence that Mexican drug cartels had been using properties without their owner's consent to grow marijuana. I believe that was the facts. And he wanted to introduce evidence of that to establish that that was possibly why there was marijuana growing on his property. And the objection was, well, you can't show that they were using your property to grow marijuana, so what relevance could it possibly have that some Mexican drug trafficking organization was growing marijuana somewhere on somebody's property? And what this Court held in a published decision was the relevant standard is low. And when you're on trial, you're entitled to establish through anecdotal evidence anything that would meet the low relevance standard and would promote your defense. And so this was just that type of example. Thank you. That's helpful. Thank you. Thank you, counsel. Thank you.        Thank you. Thank you. Okay. Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Tigar, Pregerson, Nguyen